**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JESSE J. MILLER,

                            Plaintiff,

             v.                                        No. 9:14-CV-1351
                                                       (DNH/CFH)

DR. SUBBARAO RAMINENI; at al.,

                            Defendants.

_____

**APPEARANCES:**                                **OF COUNSEL:**

JESSE J. MILLER
Plaintiff Pro Se
12-B-0543
Fishkill Correctional Facility
P.O. Box 12508
Beacon, NY 12508-0307

HON. ERIC T. SCHNEIDERMAN           NICOLE HAIMSON, ESQ
Attorney General for the                 Assistant Attorney General
       State of New York
The Capitol
Albany, New York 12224-0341
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff pro se Jessie J. Miller ("Miller"), an inmate currently in the custody of the

New York State Department of Corrections and Community Supervision ("DOCCS"),

brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants Dr. Ramineni,

_____

    [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 (b) and N.D.N.Y.L.R. 72.3 (c).

R.N. Wayne Visallr, Correction Officers Wiggins and Barker, and John Doe(s) #1-13, Correction Officers at Mid-State Correctional Facility (collectively "defendants," where appropriate), violated his constitutional rights under the Eighth Amendment. Am. Compl. (Dkt. No. 13) at 1-5. Presently pending is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). Dkt. No. 24-1. Miller did not oppose.[2] For the reasons that follow, it is recommended that defendants' motion be granted.

## I. Background

The facts are reviewed in the light most favorable to the non-moving party. At all relevant times, Miller was incarcerated at Mid-State. Miller claims that defendants violated the Eighth Amendment by denying him access to proper medical care. Am. Compl. at Dk. No. 13 at 20-21.

## A. Facts[3]

The events giving rise to Miller's claim occurred between March and April of an

---

[2] Miller's "failure to oppose [the] Defendant's motion to dismiss does not, by itself, require dismissal of his claims." Leach v. City of New York, No. 12-CV-2141, 2013 WL 1683668, at *2 (S.D.N.Y. Apr. 17, 2013). Rather, "although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." McCall v. Pataki, 232 F.3d 321, 322-23 (2d Cir. 2000).

[3] Miller provides that he did not exhaust his administrative remedies with regard to the alleged deliberate indifference claim. Dkt. No. 13 at 6-7. However, as exhaustion is an affirmative defense under the Prison Litigation Reform Act ("PLRA"), and one that defendants did not raise, the Court has jurisdiction to review his complaint. See Dorsey v. Artus, 9:09-CV-1011 (GLS/DEP), 2013 WL 5463720, at *7 (N.D.N.Y. Sept. 30, 2013).

unspecified year[4] during his incarceration at Mid-State Correctional Facility ("Mid-State").

See generally Am. Compl.  Sometime on March 17, Miller noticed that his acne had

become sore, and he submitted a request for sick call that evening.  Am. Compl. at ¶ 1.

On March 18, at approximately 6:30 AM, Miller went on sick call and was provided with

cream.  Id. at ¶ 2.

One week later, on March 25, Miller developed a "bump" under his right arm pit,

causing "a little pain, but not too serious."  Am. Compl.  at ¶ 3.  On March 26, Miller

informed Officer Wiggins that the "bump" under his arm was causing severe pain and

numbness in his arm and requested emergency sick call, which Wiggins denied.  Id. at ¶

4.  Later that day, Miller made two similar requests to John Doe #1 and John Doe #2,

correction officers, which were also denied.  Id.

On March 27, Miller explained to John Doe #3, a correction officer, that he was

experiencing severe pain and numbness in his arm resulting from the "bump" and

requested emergency sick call, which was denied.  Am. Compl. at ¶ 5.  Later that

morning, while attending his masonry vocational class, Miller's teacher noticed the bump

and that Miller was unable to perform his work due to the pain that he was experiencing.

Id.  Miller's teacher arranged for him to be seen at emergency sick call.  Id.  R.N. Visallr

examined Miller at emergency sick call later that day and documented that Miller had

impaired mobility, swelling, and redness on his right arm and that his bicep had swollen

---

[4]  The Amended Complaint does not provide the year in which these incidents occurred.  As the undersigned recommends a dismissal on the merits, it is not necessary to reach defendants' statute of limitations argument regarding plaintiff's failure to specify the year of the alleged medical indifference. See Dkt. No. 24-1, at 6, supra.  It is noted that, should the District Judge disagree with the undersigned's determination on the merits, it is recommended that Miller be directed to amend his complaint to afford plaintiff the opportunity to provide the year in which the alleged incidents occurred.

three (3) to four (4) inches into his right arm pit.  Id.  R.N. Visallr diagnosed Miller with cellulitis, prescribed him 500mg of the antibiotic Keflex, and instructed him to return to sick call if the symptoms worsened.  Id.  Between March 28 to April 3 the bump remained relatively unchanged and Miller's diminished ability to engage in physical activity continued.  Id. at ¶ 6.

On March 29, while working at his cleaning job at the infirmary, Miller explained to Officer Barker that he was unable to work due to the pain that he was experiencing and requested consultation with one of the nurses.  Am. Compl. at ¶ 7.  Officer Barker denied Miller's request and told him to sit down rather than work.  Id.  On April 3, Miller's bump became more painful, rendering him unable to eat or sleep and impairing his mobility.  Id. at. ¶ 8.  Miller described his symptoms to John Doe #5 and requested emergency sick call, which was denied.  Id.  On April 4, Miller explained his symptoms to John Does #6, #7, and #8, and made requests for emergency sick call, which we"re all denied.  Id. at ¶ 9.  The bump "popped" over night.  Id. at ¶ 10. By the next morning, April 5, the bump "started to feel better," and by that night the bump "went down in size and started to feel better."  By the morning of April 6, the bump was "going away."  Id. at ¶ 11.

While showering on April 6, Miller "pressed on [his] left upper chest while washing" and experienced "a pain."  Am. Compl. at ¶ 11.  Miller noticed a "little bump" on his chest that was slightly larger than a pimple, which he "paid no attention to," since he "normally . . . get[s] acne on [his] chest.  Id.  Over the course of the day, the "bump" became red and swollen.  Id.  Miller requested emergency sick call, which was denied by John Does #9 and #10.  Id.  On April 7, the bump became "even worse" and Miller requested

emergency sick call from the "am, pm and evening officers," which was again denied. Id. at ¶ 12.

On April 8, Miller went to emergency sick call where he was seen by Nurse P. Reese[5] at 7:45 AM, and then by Dr. Ramineni at 10:00 AM. Am. Compl. at ¶ 13. Dr. Ramineni increased Miller's antibiotic dosage, noted that Miller had no drainage or fever, and instructed him to return if the bump became worse. Id. Dr. Ramineni examined the bump by looking at it, but did not perform any additional "tests," and told Miller to return if it worsened. Id. On April 9, the bump swelled, his pain increased, and Miller felt sick, feverish, and had difficulty moving. Id. at ¶ 14. Miller explained his condition and requested emergency sick call from correction officers John Does #11, 12, and 13; all requests were denied. Id. Miller asserts that "one officer told me [the] only way to emergency sick call was if I was dying or bleeding to death." Id. Miller does not specify which officer made this statement.

On April 10, Miller went to emergency sick call and saw Nurse Santamour.[6] Am. Compl. at ¶ 15. Miller was then brought to St. Elizabeth's hospital in Utica, where he was seen by a physician and admitted for observation. Id. On April 13, Miller was diagnosed with Methicillin-resistant staphylococcus aureus ("MRSA") and moved into an isolation room at the hospital. Id. at ¶ 18. Miller returned to Mid-State on April 15, where he was admitted to the infirmary and continued on his antibiotic treatment. Id. at ¶ 19. On April

_____

[5] All claims against Nurse Reese were dismissed by a prior Order of this Court. See Dkt. No. 15, supra.

[6] All claims against Nurse Santamour were dismissed by a prior Order of this Court. See Dkt. No. 15, supra.

23, Miller was placed on a nasal ointment.  Id. at ¶ 20.  On April 26, Miller was

discharged from the infirmary into general population and remained on antibiotics and

nasal ointment treatment.  Id. at ¶ 21.  On April 24, Dr. Mannava, a Mid-State physician,

cleared Miller of MRSA.  Id. at ¶ 22.[7]

## II. Discussion

### A. Legal Standard[8]

A plaintiff's claim can be dismissed for failure to state a claim under FED. R. CIV.

P.12(b)(6) if the court finds that "'it appears beyond doubt that the plaintiff can prove no

set off acts in support of his claim which would entitle him to relief.'"  Davis v. Goord, 320

F.3d 346, 350 (2d Cir. 2003) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  To

defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (explaining that the plausibility test

"does not impose a probability requirement . . . it simply calls for enough fact to raise a

reasonable expectation that discovery will reveal evidence of illegal [conduct].");  see also

Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss,

---

[7] All claims against Dr. Mannava were dismissed by a prior Order of this Court.  See Dkt. No. 15, supra.

[8] Any unpublished cases cited within this Report-Recommendation and Order are attached hereto.

courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted)).

Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (citations omitted). Although a complaint attacked under the standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. These factual allegations must raise the possibility of relief above a "speculative level" and are based on "the assumption that all of the complaint's allegations are true." Id.

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, . . . that a pro se litigant's submissions must be construed liberally, . . . and that such submissions must be read to raise the strongest arguments that they suggest. . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not suggest, . . . that we should not excuse frivolous or vexatious filings by pro se litigants . . . and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law
> . . . .

Id. (citations, internal quotation marks, and footnote omitted) (internal quotations omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'") (citation omitted).

## B. Eighth Amendment Medical Indifference

The Eighth Amendment proscribes the infliction of "cruel and unusual punishments" upon those convicted of crimes, "which includes punishments that involve the unnecessary and wanton infliction of pain." U.S. CONST. amend. VIII; Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citing Gregg v. Georgia, 428 U.S. 153, 173 (1976)). The unnecessary and wanton infliction of pain includes deliberate indifference to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle, 429 U.S. at 104)). The deliberate indifference standard consists of both an objective and subjective component. Hathaway, 37 F.3d at 66. The objective component requires that the plaintiff's alleged medical need be "sufficiently serious." Id. The subjective component requires the plaintiff to demonstrate that the defendant has acted with a "sufficiently culpable state of mind." Id.

## 1. Objective Prong

As a threshold matter, in order for a prisoner to state a cognizable claim of deliberate indifference, he must make a showing of serious illness or injury.  Smith v. Carpenter, 316 F.3d 178, 184 (citation omitted).  A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain."  Hathaway, 37 F.3d at 66 (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990 (Pratt, J., dissenting).  As there is no bright-line rule to determine whether a condition is sufficiently serious, the Second Circuit has identified several factors that are highly relevant to the inquiry, including: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'"  Brock v. Wright, 315 F.3d 158, 163-63 (2d Cir. 2003) (citing Chance, 143 F.3d at 702 (internal citation omitted)).

Here, construing Miller's complaint liberally to raise the strongest arguments that it suggests, it can be inferred that Miller alleges that he experienced severe pain and that his daily activities were affected as a result of his skin condition.  Triestman, 470 F.3d at 477; Am. Compl. at ¶ 20-22.

Miller alleges that he experienced increased irritation stemming from recurring acne, which apparently developed into cellulitis and eventually MRSA.  See Am Compl. at ¶ 1, 5, 18.  The record demonstrates that Miller tested positive for MRSA.  Id. at ¶ 18.  Several courts have concluded that MRSA constitutes a sufficiently serious medical condition.  See Washington v. Westchester County Dep't of Corr., No. 13-CV-5322, 2014

WL 1778410, at *5 (S.D.N.Y. Apr. 25, 2014) (holding that MRSA constitutes a serious medical condition since it is capable of causing death, degeneration, or extreme pain); Gaines v. Armor Health Care, Inc., No. 12-CV-5663, 2013 WL 6410311, at *5 (E.D.N.Y. Dec. 9, 2013) (indicating that the plaintiff's MRSA infection constituted a sufficiently serious medical condition); Wargula v. Erie County Sheriff Dept., No. 08-CV-00280, 2010 WL 376402, at *4-5 (W.D.N.Y. Jan. 25, 2010) (assuming that the plaintiff's MRSA infection constituted a sufficiently serious medical condition). Accordingly, Miller has plausibly pleaded the objective requirement for establishing a claim of deliberate medical indifference. Hathaway, 37 F.3d at 66.

### 2. Subjective Prong

A prison official acts with a sufficiently culpable state of mind when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (N.D.N.Y 1999). Non-medical prison personnel engage in deliberate indifference where they "intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel." See Baumann v. Walsh, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999); see also Estelle, 428 U.S. at 104-05 (noting that deliberate indifference may be manifested when prison guards intentionally deny or delay access to medical care).

However, "[a] difference of opinion between an inmate and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference." Adams v. Rock, 12-CV-1400 (GLS/ATB), 2015 WL 1312738, at *7 (N.D.N.Y. Mar. 24, 2015) (citing Chance, 143 F. 3d at 703). "Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." Baumann, 36 F. Supp. 2d at 512. Courts have held that, where a plaintiff receives appropriate treatment for a skin infection, which later develops into MRSA, a plaintiff will not be able to establish deliberate indifference to serious medical needs where the plaintiff offers no allegations of the acts or omissions in his care and treatment that resulted in him contracting MRSA. See Maldonado v. Wells, 9:12-CV-1290 (LEK/CFH), 2015 WL 3455215, at *8 (N.D.N.Y. May 28, 2015); Wargula, 2010 WL 376402, at *5.

### a. Corrections Officer Wiggins[9]

Miller visited sick call on March 18 and was placed on cream after his acne became sore. Am. Compl. at ¶ 1-2. On March 25, Miller discovered a "lump" that was developing under his right arm pit. Id. at ¶ 3. Then, on March 26, Miller explained to Wiggins the details of his March 18 sick call visit, that a "lump" had developed under his arm pit, that he was in "severe pain," that his arm was numb, and requested emergency

---

[9] To the extent Plaintiff seeks to bring an Eighth Amendment claim against Wiggins in his official capacity, such claim must be dismissed as "claims against a government employee in his official capacity are treated as a claim against the municipality," and, thus, cannot stand under the Eleventh Amendment. Hines v. City of Albany, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008).

sick call. Id. at ¶ 4. Miller alleges that, despite "knowing all this," Wiggins denied his request for emergency sick call. Id.

First, even assuming that Wiggins was fully informed of this information, Miller does not state a plausible claim that Wiggins knew of and disregarded an "excessive risk" to Miller's health. Farmer, 511 U.S. at 837. Miller's request to Wiggins for emergency sick call on March 26 pre-dates Miller's diagnosis of cellulitis and MRSA. See Am. Compl. at ¶ 4, 5, 18. Thus, at the time of the request, Miller could have only relayed to Wiggins that he had acne and a sore lump. Am Compl. at ¶ 1-4, 5, 18. Courts have generally held that skin conditions similar to acne are not considered "serious medical conditions." See, e.g., Reid v. Nassau Cnty. Sherrif's Dep't, No. 13-CV-1192, 2014 WL, 4185195, at *20 (E.D.N.Y. Aug. 20, 2014) (holding that an inmate's persistent skin rash and infection did not constitute a "serious medical need."); Samuels v. Jackson, No. 97-CV-2420, 1999 WL 92617, at *2-3 (S.D.N.Y. Feb. 22, 1999) (holding that scabies, causing open sores and scarring, did not constitute a "serious medical condition."). Thus, as Miller was not yet diagnosed with anything beyond acne at the time he asked Wiggins for sick call, Wiggins would not have reasonably inferred that denying Miller's request would result in a "substantial risk of harm" to Miller's health or safety. Farmer, 511 U.S. at 837; Am Compl. at ¶ 2.

Moreover, Miller was seen at sick call the following day, diagnosed with cellulitis, and was given an antibiotic. Am. Compl. at ¶ 5. Causing a one-day wait for medical treatment does not constitute deliberate indifference. See Allen v. Ford, 880 F. Supp. 2d 407, 411 (W.D.N.Y. 2012) (finding no medical indifference where the inmate's request for

emergency sick call was denied but the inmate was seen at sick call, pursuant to an appointment, the following day). Further, plaintiff does not demonstrate that this delay was intentional. <u>Estelle</u>, 429 U.S. at 104-05 (holding that, to demonstrate deliberate indifference, a plaintiff must show that defendant intentionally delayed medical care or infringed access to prescribed treatment). Accordingly, Miller fails to state a plausible claim for relief against Wiggins, as he does not plausibly allege that Wiggins had knowledge of a serious risk of that could result in denying such request

### b. Corrections Officer Barker[10]

On March 29, while working on his cleaning job, Miller explained to Barker, his supervising officer, that he was unable to work due to the pain caused by his cellulitis. Am. Compl. at ¶ 7. Miller asked Barker to see one of the nurses at the infirmary. <u>Id.</u> Barker denied this request and instead told Miller to sit down and rest. <u>Id.</u>

Miller fails to plausibly allege that Barker was deliberately indifferent to his serious medical needs. Miller explicitly concedes in his amended complaint that, between March 28 and April 3, the pain and redness resulting from the bump remained unchanged. Am. Compl. at ¶ 6. Therefore, even assuming that Barker was fully informed of Miller's diagnosis of cellulitis from the March 27 sick call visit, Miller admits that his condition did not worsen due to this denial. <u>Allen</u>, 880 F. Supp. 2d at 411; <u>Id.</u> at ¶ 6, 7. Additionally , other than his March 29 request to Barker, Miller made no further requests for medical

---

[10] To the extent that plaintiff's amended complaint can be read as attempting to raise a claim against Barker in his official capacity, such claim must be dismissed. <u>See</u> <u>Hines</u>, 542 F. Supp. 2d at 227.

attention until April 3.  Id. at ¶ 7-8.  Although a delay in medical care can demonstrate

deliberate indifference, the plaintiff "must show that substantial harm resulted from the

delay itself."  Colon v. Plescia, No. 07-CV-727 (DNH/DEP), 2009 WL 2882944, at *4

(N.D.N.Y. July 27, 2009). However, plaintiff provides that the bump on his arm improved

– by April 5, "the lump popped and started to feel better that morning."  Id. at ¶ 10.  Thus,

Miller fails to plausibly allege that Barker's denial of his request to see nurse amounts to

deliberate indifference.


### c. **Medical Professionals: Visallr and Ramineni**[11]

Miller alleges that R.N. Visallr and Dr. Ramineni's provision of medical care

constitutes deliberate indifference, causing his condition to escalate into MRSA, a more

threatening illness.  Am. Compl. at  5, 13, 20-21.


### i. **Visallr**

On March 27, R.N. Visallr examined Miller at sick call, diagnosed him with

cellulitis, and placed him on the antibiotic Keflex.  Am. Compl. at ¶ 5.  Miller's bump

remained unchanged between March 28 and April 3.  Id. at ¶¶ 6-8.  Miller made one

request to see a nurse on March 29, but made no other requests until April 3.  Id.  Miller's

condition improved when the bump popped on the night of April 4, and began to "go[]

away."  Id. at ¶ 11.  Miller did not request medical attention until the afternoon of April 6,

---

[11] To the extent that plaintiff's amended complaint can be read as attempting to raise Eighth
Amendment claims against defendants Vissalr and Ramineni in their official capacity, such claims must be
dismissed.  See Hines, 542 F. Supp. 2d at 227.

which was for a different bump.  Id.  On April 8, Miller went back to sick call, where he was seen by R.N. Reese at 7:45 AM, and again by Dr. Ramineni at 10:00 AM, who examined Miller's bump and increased the antibiotic R.N. Vassilr had initially prescribed. Id. at ¶¶ 5, 13.  According to Miller, Dr. Ramineni increased the antibiotic "obviously knowing it was not working."  Am. Compl. at ¶13. Additionally, Miller alleges that Dr. Ramineni only looked at his bump, without performing any "tests," and that the doctor reported that Miller had "no drainage or fever which was false."  Id.  Following Miller's return to Mid-State after his visit to St. Elizabeth's hospital, Dr. Ramineni ordered a nasal culture.  Id. at ¶ 21.

Construing Miller's amended complaint liberally to raise the strongest arguments that it suggests, the only viable allegation that can be construed against R.N. Vissalr is that his diagnosis of cellulitis on May 28 was erroneous.  Triestman, 470 F.3d at 477; Am. Compl. at ¶ 5.  However, even if R.N. Visallr's diagnosis were incorrect, it would constitute, at most, negligence or malpractice, which, without culpable recklessness – acts or omissions that evidence conscious disregard for a substantial risk of harm – does not establish an Eighth Amendment violation.  Wargula, 2010 WL 376402, at *5; Chance, 143 F.3d at 703.  R.N. Visallr's course of action in treating Miller at sick call and prescribing antibiotics for his skin condition fails to demonstrate culpable recklessness, as Visallr promptly addressed Miller's condition and provided appropriate medication for the illness he believed to be present.  Chance, 143 F.3d at 703; THE MERCK MANUAL OF DIAGNOSIS AND THERAPY  694-95 (Robert S. Porter, MD, et al. eds., 19th ed. 2011) (noting that antibiotic treatment is appropriate for cellulitis); See Wargula, 2010 WL 376402, at

*5; Am. Compl. at ¶ 5.  Thus, Miller fails to plausibly allege that R.N. Visallr's treatment amounts to deliberate indifference.

### ii.  Dr. Ramineni

Miller's allegations against Dr. Ramineni fare no better.  Miller's amended complaint seemingly alleges that Dr. Ramineni did not adequately examine the bump, incorrectly documented his condition, and improperly continued and increased his prescription of Keflax.  Am. Compl. Am. Compl. at  13.  Similar to his allegations against R.N. Visallr, Miller alleges, at most, negligence or malpractice, but fails to allege culpable recklessness.  Wargula, 2010 WL 376402, at *5; Chance, 143 F.3d at 703; Am Compl. at ¶ 13.  Miller demonstrates only that Dr. Ramineni adequately examined his cellulitis and made the discretionary, medical judgment to increase his antibiotic dose.  See Church v. Hegstrom, 416 F.2d 449, 450-51 (2d Cir. 1969) (noting that medical professionals have discretion when treating prisoners); Mendoza v. McGinnis, No. 05-CV-1124T(JM/DEP), 2008 WL 4239760, at *11 (N.D.N.Y. Sept. 11, 2008) (concluding that determinations made by medical professionals exercising their discretion are presumptively correct when they concern the care of patients); THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 694-95 (stating that the proper diagnostic technique for cellulits is examination; cultures are generally not indicated as they rarely identify the infecting organism.).  Thus, the fact that Miller believes that Dr. Ramineni should have performed different or alternative treatments or examined him differently, does not amount to an Eighth Amendment

violation.  <u>Chance</u>, 143 F. 3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.").

The same general analysis applies to Miller's allegation that Dr. Ramineni either erroneously documented that Miller had no drainage or fever or erroneously failed to check whether Miller had drainage or fever.  <u>See</u> Am. Compl. at ¶ 13.  Even assuming Dr. Ramineni incorrectly documented Miller's condition, Dr. Ramineni's discretionary approach enjoys the presumption of validity, and Miller's mere disagreement does not amount to a claim of deliberate indifference.  <u>Church</u>, 416 F.2d at 450-51; <u>Mendoza</u>, 2008 WL 4239760, at *11; <u>Chance</u>, 143 F. 3d at 703; Am. Compl. at ¶ 13.


### iii.  **MRSA as a result of Nurse Visallar and Dr. Ramineni's Care**

Insofar as Miller alleges that he developed MRSA as a result of R.N. Visallr and Dr. Ramineni's inadequate medical care, he again fails to plausibly state a claim of deliberate indifference.  Courts have held that, where an inmate is appropriately treated for a skin infection, which later develops into MRSA, deliberate indifference to serious medical needs will not be established.  <u>See</u>, <u>e.g.</u>, <u>Wargula</u>, 2010 WL 376042, at *4-5.  In <u>Wargula</u>, an inmate who was experiencing pain from a skin infection was initially seen at sick call and prescribed an antibiotic  <u>Id.</u> at *3.  The inmate was reevaluated and his was medication adjusted after experiencing further symptoms approximately a week after his initial sick call and diagnosis.  <u>Id.</u> at *4.  Two days after his last sick call, the inmate was taken to the hospital where medical professionals diagnosed MRSA.  <u>Id.</u> at *4.  Based on these facts, the Court held that, "rather than suggesting indifference, the record

demonstrates that plaintiff's complaints were addressed" and that the "infection was timely treated and diagnosed." Id. at *5.

Here, Miller was seen at sick call and prescribed an antibiotic after experiencing pain resulting from his skin infection. Am. Compl. at ¶ 5. He was reevaluated and his medication was adjusted after experiencing further symptoms approximately a week after his initial visit and diagnosis. Am. Compl. at ¶ 13. Finally, three days after his last sick call visit at Mid-State, Miller was taken to St. Elizabeth's Hospital, where his MRSA infection was diagnosed and treated. Am. Compl. at ¶¶ 13-16. Miller's amended complaint demonstrates that his medical situation was addressed and that his MRSA infection was timely diagnosed and treated. Wargula, 2010 WL 376042, at *5; Am. Compl. at 5, 13-16. Therefore, Miller fails to plausibly allege a claim of deliberate indifference to his serious medical needs. See Maldonao, 2015 WL 3455215, at *8 (holding that the plaintiff failed to establish deliberate indifference where he defendants prescribed antibacterial and pain medication, scheduled him for follow up visits, and changed the dressings on his wound, as the defendants "took sufficient measures to avoid the risk of harm posed by the presence of MRSA in [the plaintiff's] incisional wound."); Sheils v. Flynn, No. 9:06-CV-407, 2009 WL 2868215, at *18 (N.D.N.Y. Sept. 2, 2009) (holding that the defendants' failure to immediately diagnose the plaintiff's lesion, although it may amount to medical malpractice, did not amount to deliberate indifference where the plaintiff received frequent medical care and was prescribed various medications).

### d. John Doe Defendants

### i. John Does # 1, 2, and 3

On March 26 – the same day that Officer Wiggins denied Miller's emergency sick call request – John Does #1 and #2 also denied him sick call. Am. Compl. at ¶ 4. Miller allegedly informed John Does #1 and #2 about his March 18 sick call visit where he was provided with cream for his sore acne and explained that the bump under his arm had increased in pain and size since his earlier request to Wiggins. Id. at ¶ 1-4.

On March 27, the morning after Miller had been denied sick call by Wiggins and John Does #1 and #2, he requested sick call from John Doe #3, which John Doe #3 denied. Am. Compl. at ¶ 5. Miller informed John Doe #3 of his March 18 sick call appointment, his acne, and that the lump under his arm had increased in size and pain. Am. Compl. at ¶ 1-5.

For the reasons that Miller's claim against Officer Wiggins fails to plausibly allege a claim of medical indifference, his claim against John Does #1, #2, and #3 also fails. Even assuming that John Does #1,# 2, and #3 were completely apprised of Miller's condition, Miller does not state a plausible claim that John Does #1, #2, and #3 knew of and disregarded an excessive risk" to Miller's health. Farmer, 511 U.S. at 837. Like Miller's request to Wiggins, his requests to John Does #1 and #2 on March 26 pre-date his diagnosis of cellulitis and MRSA. See Am. Compl. at ¶ 4, 5, 18. Therefore, Miller could only have informed John Does #1, #2, and #3 that he had acne and a sore lump. Am Compl. at ¶ 1-4, 5, 18. As mentioned, courts have generally held that skin conditions similar to acne are not considered "serious medical conditions." See supra II(b)(2)(a).

Thus, since Miller was not yet diagnosed with any medical condition beyond acne at the time of his requests for sick calls, officers John Does #1, #2, and #3 would not have reasonably inferred that denying Miller's requests would result in a "substantial risk of harm" to Miller's health or safety. <u>Farmer</u>, 511 U.S. at 837; Am. Compl. at ¶ 2

Moreover, Miller was seen by medical staff the day after he made his request to John Does #1 and # 2 – and just hours after his request to John Doe #3 – was diagnosed with cellulitis, and was provided an antibiotic. Am. Compl.  ¶ 5.  A one-day wait for medical treatment will not constitute deliberate indifference where the inmate was not in any risk from the delay.  <u>See</u> <u>Allen</u>, 880 F. Supp. at 411; Am. Compl. at ¶ 5.  Further, Miller does not demonstrate that John Does #1, #2, and #3 intentionally delayed his treatment as a form of punishment.  <u>Estelle</u>, 429 U.S. at 104-105.  Accordingly, Miller's claims against John Does #1,  #2, and #3 fail to state a plausible claim for relief.

### ii. John Does # 4, # 5, # 6, # 7, and # 8

Miller was seen at sick call on March 27, diagnosed with cellulitis, and provided with the antibiotic Keflex.  Am. Compl. at ¶ 5.  The pain and redness resulting from the bump under his arm remained unchanged between March 28 and April 3.  <u>Id.</u> at ¶ 6.  After his request on March 29, Miller made alleges no requests for medical attention until April 3.  <u>Id.</u> at ¶ 7-8.  On April 3, Miller allegedly explained to John Does #4 and #5 that he had been diagnosed with cellulitis, was prescribed an antibiotic, that he was in "lots of pain," and requested sick call, which John Does #4 and #5 denied.  <u>Id.</u> at ¶ 5, 8.  Further, on April 4, John Does #6, #7, and #8 denied his requests for sick call after Miller had

explained his medical situation.  Id. at ¶ 9.

Miller fails to plausibly allege that John Does #4 - #8 were deliberately indifferent to his serious medical needs.  A mere delay in medical care, without more, is insufficient to demonstrate deliberate medical indifference.  See Colon, 2009 WL 2882944, at *7. Rather, a plaintiff must show that substantial harm resulted from the delay.  Id.  Here, Miller fails to show that he suffered any substantial harm resulted from any delay in treatment caused by John Does #4-#8.   Colon, 2009 WL 288294, at *7; Am. Compl. at ¶ 8.  In fact, Miller's amended complaint shows that his medical condition actually improved very shortly after he made his sick call requests – as early as the night of April 4, but no later than April 5 – as the bump under his arm popped and felt better.  See Am. Compl. at ¶ 10.  Additionally, according to Miller, John Doe #4 and #5 knew that he was receiving antibiotic treatment for his cellulitis.  See Am. Comlp. at ¶ 8.  Thus, these defendants would not have reasonably inferred that denying Miller's request for sick call would result in any substantial risk of harm to Miller's health or safety, as Miller allegedly informed the two officers that he was already receiving treatment for his skin condition.  Farmer, 511 U.S. at 837; Am. Compl. at ¶ 8.

Accordingly, Miller's amended complaint fails to plausibly allege that John Doe #4, #5, #6, #7, or #8 acted with deliberate indifference toward his serious medical needs.


### iii. John Does #9 and #10

On April 4 or 5, the lump under Miller's arm popped, felt better, and decreased in size throughout the day on April 5.  Am. Compl. at ¶ 3, 10.  On April 6, while showering,

Miller noticed a "little bump" on his chest.  Id. at 11.  By the afternoon of April 6, the new bump increased in size, became red and swollen, and caused Miller "a lot of pain."  Id. Miller explained his symptoms and medical situation and requested emergency sick call from John Does #9 and #10, which they denied.  Id.  On April 8, Miller was seen at sick call at 7:45 AM by R.N. Reese and again at 10:00 AM by Dr. Ramineni, who increased his dosage of Keflex.  Id. at 13.

Miller fails to plausibly allege a claim of medical indifference against John Does #9 and #10.  Even assuming that Miller had fully explained his medical situation to John Does #9 and #10, as he claims, they would not have reasonably inferred that there was a substantial risk of harm to Miller's health, because if Miller had fully informed these defendants of his medical condition, as he alleges to have done, such information would necessarily include the fact that he was prescribed antibiotics for his skin condition. Farmer, 511 U.S. at 837; Am. Compl. at ¶ 11.  Thus, John Does #9 and #10 would be under the impression that his condition was being actively treated.  Additionally, Miller was seen at sick call at 7:45 AM on April 8, less than two days after John Does #9 and #10 denied his request, and there is no indication that Miller suffered substantial harm as a result of this wait.  See Colon, 2009 WL 288294, at *7; Am. Compl. at ¶ 11, 13.  Thus, Miller fails to plausibly allege a claim of deliberate indifference against John Does #9 and #10.

### vi. John Does #11, #12, and #13

On April 8, Miller visited sick call and his antibiotic was increased.  Am. Compl. at

¶ 13.  On April 9, Miller alleges that the bump became more swollen and painful, resulting in decreased mobility and causing him to feel feverish.  Id. at 14.  Miller alleges that he requested emergency sick call from John Does #11, #12, and #13, and his requests were denied.  Id.  Again, Miller alleges that these officers denied emergency sick call "knowing" all of the details of his medical condition.  Id.  Further, Miller alleges that one of these three officers told him that the only way to get an emergency sick call was if he was "dying or bleeding to death."  Id.  Miller does not identify which officer made this statement.  Id.  The following day, April 10, Miller was seen at emergency sick call and later brought to St. Elizabeth's Hospital.  Id. at 15.  On April 13, Miller was moved into isolation at St. Elizabeth's due to his MRSA diagnosis.  Id. at  18.

"[W]here . . . a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation'" constitutes deliberate indifference.  Bilal v. White, 494 F. App'x 143, 146 (2d Cir. 2012) (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003) (citation omitted).  Specifically, in order to establish deliberate indifference based on a temporary delay or interruption in treatment where a prisoner is receiving otherwise appropriate on-going medical treatment for an objectively serious medical condition, the prisoner must demonstrate that the temporary delay or interruption resulted in "serious consequences."  See Bilal, 494 F. App'x at 146 (where a prisoner alleged that a temporary interruption in medical treatment occurred, but did not assert that any "consequential injurious effects" resulted from the interruption, the Second

-23-

Circuit held that the plaintiff failed to establish deliberate indifference); see also Colon, 2009 WL 288294, at *7 (holding that a delay in medical treatment, alone, is insufficient to establish deliberate indifference and that a plaintiff must demonstrate that substantial harm resulted from the delay itself). Moreover, "the fact that plaintiff contracted a MRSA infection, standing alone, does not support and Eighth Amendment deliberate indifference claim." Wargula, 2010 WL 376402, at *5.

Miller fails to plausibly allege a claim of medical indifference based on delay in treatment because he fails to allege that the one-day interruption in sick call visits caused by John Does' #11-13 denial for emergency sick call on April 9, in itself, caused any "serious consequence" or "substantial harm." Bilal, 494 F. App'x at 146; Colon, 2009 WL 288294, at *7; Am. Compl. at ¶ 13-22. Miller visited sick call both the day before the April 9 denial and the day after. Am. Compl. at ¶ 13-15. Moreover, as the undersigned has discussed, Miller was timely diagnosed with, and adequately treated for, cellulitis. See supra II(B)(2)(c). Therefore, the denial of emergency sick call by John Does #11-13 constitutes, at most, a temporary delay or interruption where a prisoner is receiving otherwise adequate medical treatment. Bilal, 494 F. App'x at 146.

Moreover, the fact that Miller was diagnosed with MRSA and isolated on April 13, three days after leaving Mid-State for admission at St. Elizabeth's does not demonstrate that the one-day delay or interruption in treatment allegedly caused by John Does #11-13 constitutes deliberate indifference. See Wargula, 2010 WL 376402; White v. Sears, No. 9:10-CV-0721 (MAD/GHL), 2011 WL 2728443, at * 6 (N.D.N.Y. June 20, 2011) (holding that a two-month delay in medical care did not constitute deliberate indifference); Am.

Compl. at ¶ 15. Thus, Miller does not plausibly allege that the one-day wait between sick call visits due to the denial of sick call by John Does #11-13 caused him to suffer "serious consequences" or "substantial harm." Therefore, Miller fails to state a claim of deliberate indifference against John Does #11-13.

Miller's allegation that one of the above unidentified officers told him that the only way to get emergency sick call is if he were "dying or bleeding to death," is of no effect to the analysis here, since Miller fails to plausibly allege that he suffered any substantial harm as a result of being denied sick call on April 9 and provides no assertion that the uttering of this phrase demonstrates that the denial was intended as punishment or to cause him to suffer. Bilal, 494 F. App'x at 146; Colon, 2009 WL 288294, at *7; Magee v. Childs, No. 04-CV-1089 (GLS/RFT), 2006 WL 681223, at *4 (N.D.N.Y. Feb. 27, 2006) ("Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, such a classification is reserved "for cases in which, for example, officials deliberately delayed care as a form of punishment . . . .").[12] Rather, Miller alleges only that this denial led to an increase in the severity of his illness. Am. Compl. at ¶ 20-21. However, considering the adequacy and timeliness of the medical care received, Miller's amended complaint does not plausibly allege that it was the minor delay that caused such a result.

### III. Conclusion

---

[12] The undersigned wishes to note that, should the District Court Judge disagree with the undersigned's recommendation dismissing the claims against the John Doe defendants, Miller would still need to establish both the identify of the John Doe defendants and their personal involvement, as he does not identify which defendant made such statement.

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 24) be **GRANTED**; and it is

**ORDERED** that a copy of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636 (b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within **fourteen (14) days** after being served with a copy of the . . . recommendation." N.D.N.Y.L.R. 72.1(c) (citing 28 U.S.C. § 636 (b)(1) (B)-(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  See Roldan v. Racette, 984 F. 2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F. 2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636 (b)(1); FED R. CIV. P. 72, 6(a), 6(e).

  **IT IS SO ORDERED**.


Dated: February 29, 2016
Albany, New York

_Christian F. Hummel_
Christian F. Hummel
U.S. Magistrate Judge